Submitted on briefs March 16, affirmed April 6, rehearing dénied April 27, 1920.

## LESSER v. PALLAY.*

(188 Pac. 718.)

**Arbitration and Award—"Umpire" Defined.**

1. A third person, chosen by two arbitrators who cannot agree, is not, in the strict sense, an umpire, unless he succeeds to the duties of those who have chosen him to accomplish that wherein they have failed, making the original arbitrators *functus officio*.

**Arbitration and Award—Power of Two Arbitrators to Name Third not Exhausted by Single Nomination.**

2. The power of arbitrators to select a third arbitrator or umpire on failing to agree is not necessarily exhausted by a single nomination, and was not exhausted where nominee died before having acted.

**Arbitration and Award—Death of Umpire or Arbitrator Nominated Did not Exhaust Power to Nominate.**

3. Where two arbitrators selected to partition land could not agree and named a third arbitrator, and the three investigated the land, and, after agreeing to meet on the following Monday, sepa-

*On the question of general right of revocation of submission, see note in 47 L. R. A. (N. S.) 400.          REPORTER.

rated and the third arbitrator died on Sunday, there was no such
performance or action by the third arbitrator as would preclude
the arbitrators from naming a successor.

**Arbitration and Award—Agreement of Submission Under Seal Re-
voked Only by Writing Under Seal.**

4. The formality of a revocation of a submission of matters to
arbitrators must conform to the formality of the submission, and
if the submission is under seal, or by deed, the revocation must
be under seal, and if the submission is in writing, the revocation
must be in writing; a simple letter not being sufficient to revoke
a submission under seal.

**Arbitration and Award—No Necessity for Hearing by Arbitrators.
Whose Only Duty was to Divide Realty.**

5. Arbitrators selected to divide realty between owners are not
different from referees in partition, and where it was not contem-
plated that they should, do anything more than to go upon the
premises, survey the same, and divide the ground into three tracts
in the manner stipulated, and make a report of their action, an
award made by them was valid, although the parties were not given
the opportunity to appear before them for a hearing.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

In Banc.

This is a suit to enforce the award of an arbitra-
tion, and for other relief. The facts as gleaned
from the pleadings are, that on June 16, 1917, the
plaintiffs and defendant Pallay were the joint owners
of a tract of land lying partly in Multnomah and
partly in Clackamas Counties, Pallay being the
owner of an undivided two thirds, and Lesser and
Lubliner being each the owner of an undivided one
sixth thereof. The Security Savings & Trust Com-
pany holds the naked legal title in trust for the
plaintiffs and defendant Pallay. Being desirous of
having the lands partitioned so that each might hold
his share in severalty, on the date above mentioned
the parties entered into a written agreement,
whereby plaintiffs named B. D. Sigler and Pallay
named Frank E. Watkins as arbitrators to partition
the lands, and providing that if they were unable to
agree thereon, they were to select a third person to

act as umpire, and that an award of the arbitrators or of one of the arbitrators and the umpire should be conclusive and binding upon the parties. It was further agreed that upon the award being made, the defendant Security Savings & Trust Company should execute sufficient conveyances under the award. The contract of submission, being for the partition of real property, was drawn and executed with the formality of a deed, being under seal, with two witnesses to signatures, duly acknowledged before a notary and subsequently recorded in both Multnomah and Clackamas Counties. The two arbitrators, being unable to agree upon a division of the property, named George K. Clark to act as umpire in accordance with the terms of the submission, but before Clark had formally accepted the appointment, he suddenly died, and thereafter the two arbitrators selected David S. Stearns to act as umpire, and such selection was approved by plaintiffs and Pallay.

The board of arbitrators thus constituted proceeded to have the property surveyed, examined the same, and made a division thereof upon the ground, but Watkins, at the request of Pallay, declined to sign the award, and the same was signed by Sigler and Stearns, a majority of the board, on November 6, 1917. A copy of the contract of submission, and the award of the arbitrators are made a part of the complaint, the written report of the award being under seal, and acknowledged by the arbitrators, and duly recorded in both counties. Upon notice to it by Pallay that he repudiated the award, the defendant Security Savings & Trust Company declined to accede to the demand of plaintiffs for conveyances in accordance with the terms of the award, and Pallay refused to acknowledge any obligations thereunder.

There are further allegations in the complaint to the effect that Pallay has been in the exclusive possession and control of all of the land for more than two years, and is having cordwood cut and removed therefrom, and refuses to account to plaintiffs for their portion of the income of the property or for the cordwood which has been cut. The prayer seeks relief in accordance with the allegations.

The answer of Pallay admits the joint ownership of the property and the execution of the submission as alleged, admits the selection and subsequent death of George K. Clark, admits that he requested the trustee not to issue conveyances under the alleged award, and denies the other allegations of the complaint. It is then affirmatively averred that the arbitrators named in the contract, being unable to agree, selected Clark to act as umpire, and that he duly qualified, and the three attempted to reach a determination under the terms of the submission, but before it was reduced to writing, Clark died, and that Sigler and Watkins, in excess of their authority, selected Stearns as umpire, whereupon Pallay notified Watkins that he would not be bound by any award thereafter made, and Watkins resigned as arbitrator, before any decision was made, and that therefore the award is void. For a second defense defendant asserts that Sigler and Stearns fraudulently conspired, as agents of the plaintiffs, to make an *ex parte* award, without authority or consent of Pallay, to enrich plaintiffs by an unfair division at the expense of the defendant Pallay.

The answer of the Security Savings & Trust Company sets out the nature of its trust, and its readiness to perform as decreed by the court, and asks judgment for $150 as reasonable compensation for its services as trustee.

96 Or.—10

A reply having been filed, there was a trial resulting in a decree affirming the award of the arbitrators, directing the specific performance of the contract, allowing compensation to the trustee, and allowing each plaintiff a specified sum as the rental value of his share of the land as occupied and enjoyed by defendant Pallay. The defendant Pallay appeals.                                    AFFIRMED.

For appellant there was a brief prepared and submitted by *Mr. Thomas Mannix.*

For respondents there was a brief submitted over the name of *Messrs. Teal, Minor & Winfree.*

BENSON, J.—1, 2. The appellant contends that the award is invalid for two reasons: (a) That since, under the terms of the written agreement, the third party to be chosen upon the failure of the two specified arbitrators to agree, was not to be the sole arbiter; but was to act with the others in breaking the deadlock, he was not an umpire, but an arbitrator, and that the death of one of the arbitrators terminates the authority of all. In support of this doctrine our attention is directed to the case of *Blundell v. Brettargh,* 17 Ves. Jr. 231. The case cited is of no aid to us upon the question here presented, for the reason that in that case, it was not an arbitrator who died, but one of the parties to the contract of submission. It is true, as counsel for appellant contends, that the third person chosen by the arbitrators named in the contract was not, in the strict sense, an umpire, for an umpire is one who succeeds to the duties of those who, after failure to agree, have chosen him to accomplish that wherein they have failed, making the original arbi-

trators *functus officio*. By the terms of the submission, the third party chosen by the two referees named therein was to operate with the others in order to secure a majority, and was therefore what may be called a special arbitrator. It may be conceded for the purpose of this discussion, that if one of the arbitrators named in the written submission had died, or refused to act, before an award had been agreed upon, there could have been no award and the entire affair would have been thereby ended, since the personal participation of each was one of the express terms of the contract. The death of Mr. Clark, however, who was selected, not by signers of the agreement, but by the arbitrators themselves, presents a different question, since his failure to act did not have any effect upon the express terms of the written instrument, as would have been the case if such writing had named him as the umpire or special arbitrator. It is of no consequence to the present inquiry, whether we call him an umpire or an arbitrator, since under either title, or with the powers belonging to either title, his appointment is from the same source, the only difference being in the extent of his powers. Since he is to be chosen by the two arbitrators specified in the contract, their powers in the one case are logically the same as in the other. Upon this question, Morse on Arbitration and Award, page 245, says:

"The power of arbitrators to name an umpire is not necessarily exhausted by a single nomination. If the nominee refuse to accept, or neglect to act, successive nominations may be made, until someone is found who will actually exercise the function. The authority is determined only when it has been fully executed."

An interesting discussion of this subject is found in the case of *Cloud* v. *Sledge*, 1 Bail. (S. C.) 105, wherein, under the terms of the submission, the two arbitrators, being unable to agree, named as umpire a Dr. Douglass, who, after an investigation of the matters presented, declared himself unable to arrive at a satisfactory conclusion, and recommended that a man named Gill should be called in as umpire in his stead, and this was done. Upon appeal it was urged that the powers of the arbitrators had been exhausted in appointing Dr. Douglass, but the court says:

"Formerly much strictness was required in the execution of the authority delegated to these domestic tribunals, but, as it was found to impede the determination of cases, and greatly to hinder and delay the administration of justice, this strictness has been relaxed; and if the arbitrators act in good faith, and the decision is fairly and impartially made, it is the inclination of the courts in all cases to support the award. The right of the arbitrators to appoint a second umpire, where the first has refused or declined to act, was once questioned, but it had long since been determined, that they have this power, and, indeed, it is somewhat surprising that it should ever have been questioned."

The court in that case held that a successor to Dr. Douglass was properly selected. This ruling appears to be in accord with modern authority, and meets our approval.

3. As to whether or not Mr. Clark had assumed the duties of his task as an arbitrator, the record discloses that when notified of his selection, he accompanied Mr. Sigler and Mr. Watkins to the land in controversy, where they made some investigation and had some discussion as to what should be done, and then, after agreeing to meet on the following Mon-

day for further proceedings, they separated, and upon the intervening Sunday Mr. Clark died. There was here no such performance or action by Mr. Clark as would preclude the arbitrators from naming his successor.

4. (b) It is also contended by appellant, that even if it be conceded that Stearns was legally chosen to succeed Clark, the award is nevertheless void because Pallay gave notice of his revocation of the arbitration before any award was made or published. The evidence discloses that the three arbitrators together visited the ground, inspected it from various points, drew a plat disclosing the three tracts to be awarded, as agreed upon by all three; and then instead of making their report at once, they awaited the return of Mr. Winfree, then out of town, upon whom they relied to frame their report, looking to him, for the reason that he was the attorney who had prepared the contract of submission. While they were awaiting Winfree's return, and before their report was reduced to writing or signed, Mr. Pallay, by his attorney, notified the arbitrators by letter that he would not be bound by the award, and that he revoked the submission. Respondents urge that a revocation could not be thus accomplished, and their contention is undoubtedly correct. The formality of a revocation must conform to the formality of the submission. If the submission is under seal, or by deed, the revocation must be by deed. If the submission is in writing, the revocation must be in writing: Morse on Arbitration and Award, p. 232; 5 C. J., § 105, p. 57; 2 R. C. L., p. 368, § 17. It will be recalled that in the present instance the submission was by deed, and a simple letter, signed by either the appellant

or his attorney, is ineffective to accomplish a revocation.

5. It is urged, further, that the award is invalid for the reason that no opportunity was given to the parties to appear before the new board of arbitrators for a hearing, and among others, the case of *Cohn* v. *Wemme,* 47 Or. 146 (81 Pac. 981, 8 Ann. Cas. 508), is cited. This case, as well as the others which are relied upon by appellant, are cases which called for hearings and the introduction of evidence, while the case at bar is in an entirely different class. The written agreement of submission occupies the place of pleadings, stipulated facts, and an order appointing referees in a suit for partition of real property. The arbitrators are in no sense different from referees in such a suit in partition and it was not contemplated that they should do anything more than to go upon the premises, survey the same, and, in the exercise of their best judgment, divide the ground into three tracts in the manner stipulated, and make a report of their action. Such proceedings do not contemplate a hearing before the arbitrators, and the fact that there was no such hearing cannot affect the award.

We have carefully considered the entire record, and find that the award is fair and just, and the findings and decree of the trial court thereon, and upon the question of rentals, meet with our approval. The decree is therefore affirmed.

AFFIRMED. REHEARING DENIED.